IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| PHILLIP BRYAN HARRIS, | : | |
| Plaintiff | : | |
| v. | : | CASE NO. 1:13-cv-53-WLS-MSH |
| SANFORD BISHOP, et al., | : | |
| Defendants. | : | |

**ORDER AND**
**REPORT AND RECOMMENDATION**

Presently pending before the Court are Defendants' motions for summary judgment (ECF Nos. 62, 65, 66).[1] The following motions filed by Plaintiff are also pending: a motion to appoint counsel (ECF No. 34); a motion for default judgment as to Defendants Derebail and Grundfast (ECF No. 43); a motion to order Defendants to provide Plaintiff with immediate dental services (ECF No. 45);[2] a motion to order Defendants to provide Plaintiff with immediate medical treatment (ECF No. 51); and a motion to compel discovery (ECF No. 61).[3] Each of those motions are dealt with in turn

---

[1] Hereinafter "First Mot. for Summ. J.," "Second Mot. for Summ. J.," and "Third Mot. for Summ. J." respectively.

[2] Defendants have also filed a motion for leave to file a Sur-Reply (ECF No. 54) to call the Court's attention to the untimeliness of Plaintiff's Reply regarding his motion to order dental care (ECF No. 45). The Court has considered Defendants' Sur-Reply in its analysis of the merits of Plaintiff's motion and therefore Defendant's motion (ECF No. 54) is GRANTED.

[3] Plaintiff has also filed a motion for extension of time (ECF No. 74) to file his response to Defendants Derebail and Grundfast's motions for summary judgment. The Court has considered Plaintiff's response in its analysis of the motions for summary judgment and therefore Plaintiff's motion (ECF No. 74) is GRANTED.

below.[4] Furthermore, for the reasons explained below, it is RECOMMENDED that Defendants' motions for summary judgment be GRANTED.

## BACKGROUND

This action arises out of an alleged denial of medical care at the Dogherty County Jail (DCJ). Plaintiff Phillip Bryan Harris is a pretrial detainee held at DCJ under an indictment from the grand jury of multiple counts of rape, incest, aggravated child molestation, and child molestation. (Mem. in Supp. of Second Mot. for Sum. J. 1, ECF No. 65-1.) Plaintiff alleges that he has been denied certain medical care during his almost two-year confinement at the DCJ.

Plaintiff sues DCJ personnel Sheriff Kevin Sproul, Major Dan Haggerty, and Major Sabrina Lewis, and also Doctors Gopala Darebail and Matthew Grundfast, whom Plaintiff alleges are physicians "contracted" to provide services for the DCJ. (Recast Compl. 4, ECF No. 27.) He allegedly suffers from numerous medical conditions, including severe gastroparesis, chronic bone and abdominal pain, jaundice of the liver, Crohn's disease, gastrointestinal bleeding, vision problems, and broken teeth. (*Id*. at 6.) Plaintiff has filed voluminous medical records to support his claims.

According to Plaintiff and prior to his incarceration, he was scheduled by Dr. Ifechukwude Nwadei for an "emergency colonoscopy" to take place on August 25, 2011. (*Id.*) On August 20, 2011, however, Plaintiff was arrested and booked into DCJ. (*Id.*) Due to security concerns, Plaintiff's appointment was cancelled on August 23. (Derebail

---

[4] Plaintiff has also filed a motion for reconsideration (ECF No. 52) of the Court's November 26, 2013 Order (ECF No. 50). The Court does not address this motion herein.

2

Aff. 3, ECF No. 65-4.) Plaintiff contends that he has attempted to reschedule the appointment since that day, and to receive treatment for chronic pain, broken teeth, and his gastrointestinal issues. But, he alleges, each of his requests has been denied, even after numerous grievances, letters, and meetings with Defendants Derebail, Haggerty, Lewis, and Sproul. Plaintiff brings this action under 42 U.S.C. § 1983 for deliberate indifference to his medical needs.

## DISCUSSION

### I. Miscellaneous Motions

#### A. Motion to Appoint Counsel

Plaintiff requests that the Court appoint counsel to assist in this case due to his indigency. (ECF No. 34.) Under 28 U.S.C. § 1915(e)(1), the district court "may request an attorney to represent any person unable to afford counsel." However, there is "no absolute constitutional right to the appointment of counsel." *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987). Appointment of counsel is a privilege that is justified only by exceptional circumstances. *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982). In deciding whether legal counsel should be provided, the Court should consider, among other factors, the merits of Plaintiff's claim and the complexity of the issues presented. *Holt v. Ford*, 682 F.2d 850, 853 (11th Cir. 1989). Plaintiff has set forth the essential factual allegations underlying his claims, and the applicable legal doctrines are readily apparent. Plaintiff therefore has not alleged the exceptional circumstances justifying appointment of counsel under *Holt*. Accordingly, Plaintiff's motion for appointment of counsel is DENIED.

B.  Motion for Default Judgment as to Defendants Derebail and Grundfast

On October 16, 2013, Plaintiff moved for a default judgment to be entered against Defendants Derebail and Grundfast for an alleged failure to file an answer within the time alotted.  (ECF No. 43.)  Rule 55 of the Federal Rules of Civil Procedure provides that a clerk "must enter [a] party's default" when that party "failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55.  Plaintiff argues in his motion that the named defendants failed to respond to the complaint or file a waiver of service in accordance with Rule 4 of the Federal Rules of Civil Procedure. (Mot. for Default J. 2.)

Defendants responded on October 31, 2013 denying Plaintiff's claims and showing the Court that the Notice of Lawsuit and Request for Waiver of Service of Summons was signed by the U.S. Marshal's Service on August 20, 2013, and the Waivers were executed by Defendants Derebail and Grundfast on August 28, 2013. (Defs.' Resp. to Mot. for Default J. 2-3, ECF No. 46.)  The Waiver of Service forms were filed for both Defendants on September 24, 2013 (ECF Nos. 35, 36) showing execution dates of August 28, 2013.

Rule 4 of the Federal Rules of Civil Procedure cover the issue of service.  Rule 4(d) states that the defendant must be given "a reasonable time of at least 30 days after the request was sent" to return the waiver.  Fed. R. Civ. P. 4(d)(1)(F).  Defendants returned the waiver of service, as noted on the USM 285 forms file with the Court, on September 13, 2013.  (ECF Nos. 35, 36.)  Therefore, under Rule 4(d)(3), Defendants had until sixty days after the request was sent on August 20, 2013, or October 19, 2013, to

4

file an answer or other responsive pleading to avoid default. Defendants served Plaintiff with their answers by mail on October 15, 2013, within the time allowed. (ECF Nos. 40, 41.) Therefore, Defendants were not in default and Plaintiff's motion (ECF No. 43) is DENIED.

### C. Motions for Injunctive Relief

On October 25, 2013, Plaintiff filed a motion (ECF No. 45) that the Court construes as a motion for a preliminary injunction to require the DCJ provide him with "full dental care." On January 8, 2014, Plaintiff filed a motion (ECF No. 51) that the Court also construes as a motion for preliminary injunction to require the DCJ provide him with dental and medical treatment for numerous issues. Such relief is only appropriate where the movant demonstrates that: (a) there is a substantial likelihood of success on the merits; (b) the preliminary injunction is necessary to prevent irreparable injury; (c) the threatened injury outweighs the harm that a preliminary injunction would cause to the non-movant; and (d) the preliminary injunction would not be adverse to the public interest. *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034-35 (11th Cir. 2001). An irreparable injury "must be neither remote nor speculative, but actual and imminent." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citations omitted).

Plaintiff contends that although he was seen by a dentist on October 22, 2013, that dentist was instructed to remove only one of the seven "severely damaged teeth" in Plaintiff's mouth. (Mot. to Order DCJF 1, ECF No. 45.) He states that the remaining teeth cause him pain and that officials at DCJ have refused to approve further treatment. (*Id*. at 2.) Plaintiff also alleges that he has numerous medical ailments that have been left

5

untreated by Defendants. (Mot. to Provide Immediate Treatment 1-2, ECF No. 51.) Defendants show that Plaintiff has been provided with the dental care that has been deemed necessary by their dentist. (Defs.' Resp. to Mot. to Order DCJF 2-3, ECF No. 49.) Furthermore, Defendants show the Court that Plaintiff's contention that Defendants have refused to approve certain treatment is unsupported by objective fact because the dentist is paid a flat rate on a per-visit basis, and would have no interest in providing Plaintiff with only partial services as Plaintiff suggests. (*Id.* at 3.)

As discussed below, the Court finds that Defendants are entitled to summary judgment on Plaintiff's claims and therefore, Plaintiff has failed to show a "substantial likelihood of success on the merits" of his claim. Accordingly, it is RECOMMENDED that Plaintiff's motions for injunctive relief (ECF Nos. 45, 51) be DENIED.

D.  Motion to Compel Discovery (ECF No. 61)

Plaintiff also filed a motion to compel discovery on February 20, 2014. (ECF No. 61.) Plaintiff seeks certain documents that he alleges were requested in writing from Defendants Sheriff Sproul, Major Lewis, and Major Haggerty on October 28, 2013, and from Drs. Grundfast and Derebail on October 18, 2013. (Mot. to Compel 1.)

Our prior case law shows that motions to compel discovery should be filed before discovery closes. *See Bradford v. Burke*, 2011 WL 2669976 (M.D. Ga. May 18, 2011) (denying motion to compel for timeliness). Furthermore, when ruling on a motion to compel discovery, "a district court is allowed a range of choice." *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 837 (11th Cir. 2006) (internal punctuation omitted). As Defendants state in their response, discovery in this matter closed on January 21, 2014,

ninety days after the filing of their answer on October 21, 2013. (Def.'s Resp. to Mot. to Compel 1, ECF No. 68; *see* Answer, ECF No. 44.) Plaintiff's admits that he mailed the motion on February 12, 2014. (Mot. to Compel 2.) Therefore, Plaintiff's motion was filed outside the discovery period and is untimely. Plaintiff's motion to compel (ECF No. 68) is therefore DENIED as untimely.

## II. Defendants' Motions for Summary Judgment

### A. Standard of Review

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show that: (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty*, 50 F.3d 1579, 1581 (11th Cir. 1995).

An Eighth Amendment claim[5] for inadequate medical care requires a showing of acts or omissions sufficiently harmful to evidence deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A deliberate indifference claim contains both an objective and subjective component. *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1186 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Peltzer*, 536 U.S. 730, 739 (2002). Under the first component, a prisoner must set forth evidence of an "objectively serious medical" need that, if left unattended, poses a substantial risk of serious harm. *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000). A medical need is serious if it has been diagnosed by a doctor as mandating treatment or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention. *Hill*, 40 F.3d at 1187.

Once an objectively serious medical need is shown, the deliberate indifference component requires that "the response made by public officials to that need was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor*, 221 F.3d at 1257 (internal punctuation omitted). "Medical treatment violates the Eighth Amendment *only* when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' Mere incidents of negligence or malpractice do not rise to the level

---

[4] The Eleventh Circuit has held that when a pretrial detainee brings a claim for inadequate medical care it is scrutinized under the Due Process Clauses of the Fifth and Fourteenth Amendment. However, the standard in such cases is the same as a claim of cruel and unusual punishment under the Eighth Amendment. *Jordan v. Doe*, 38 F.3d 1559, 1564-65 (11th Cir. 1994)

of constitutional violations." *Harris v. Thigpen,* 941 F.2d 1495, 1505 (11th Cir.1991) (internal citations omitted).

Furthermore, "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of [the] delay in medical treatment." *Hill*, 40 F.3d at 1188. Also, when an inmate receives adequate medical care, but desires "different modes of treatment, the care the jail provided [does] not amount to deliberate indifference." *Hamm,* 774 F.2d at 1575.

B.   Discussion

Plaintiff alleges that he has been denied certain necessary medical treatments and supplies including the colonoscopy which was cancelled in August 2011, pain medicine, a "soft diet", Ensure, dental treatment, and vision care. With regard to the "soft diet," and Ensure, Plaintiff relies on the argument that he has been prescribed these items and that "intentionally interfering with the treatment once prescribed," is deliberate indifference. (Pl.'s Resp. to Second and Third Mots. for Summ. J. 17, ECF No. 77 (quoting *Estelle*, 429 U.S. at 105).) With regard to the colonoscopy, dental treatment, vision care, and pain medication, Plaintiff relies on the argument that this treatment is "necessary" and that Defendants have failed to provide them promptly and adequately.

Defendants Sproul, Haggerty, and Lewis filed the First Motion for Summary Judgment (ECF No. 62) on February 20, 2014. Defendant Derebail filed the Second Motion for Summary Judgment (ECF No. 65) on February 26, 2014, and Defendant Grundfast filed the Third Motion for Summary Judgment the same day (ECF No. 66).

9

Plaintiff responded to each motion in turn.  (*See* ECF Nos. 72, 77, 78, 79.)  The motions are now ripe for review.

The Court has considered the arguments raised in each motion, and finds them to be persuasive.  Defendants argue that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA) as to many of his claims.  The Court agrees.  The Court does not address Defendants other specific arguments, however, because the remainder of this case should be resolved by determining whether any genuine issue of material fact exists regarding the one main question: Has Plaintiff shown that Defendants were deliberately indifferent to his medical needs?  The Court finds that no issue of fact exists and Plaintiff has not shown deliberate indifference on the part of any of the Defendants.  Therefore, it is recommended that their motions be granted.

*1.     Exhaustion of Administrative Remedies*

Title 42, United States Code section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.  "[W]hen a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit."  *Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005) (internal quotation marks and citation omitted).  Furthermore, the Eleventh Circuit has held that in order to properly exhaust the grievance procedure, the prisoner must

10

"timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures before filing a federal claim." *Id.* at 1159.

"[D]eciding a motion to dismiss[6] for failure to exhaust administrative remedies is a two-step process." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's versions of the facts as true." *Id.* If, taking plaintiff's facts as being true, the defendant is entitled to dismissal for failure to exhaust, then the complaint should be dismissed. *Id.* "If the complaint is not subject to dismissal at the first step . . . , the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* The defendant bears the burden of proof during this second step. *Id.*

Here, Plaintiff alleges that he has grieved these issues by "phone, mail and letters," to no avail. (Pl.'s Resp. to First Mot. for Summ. J. 2, ECF No. 72.) He further alleges that he and his mother have had conversations with Defendants Lewis and Sproul regarding these issues and that Defendants have done nothing. Defendants respond by filing a copy of every grievance filed by Plaintiff through the prison grievance procedure[7]

---

[6] "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008)

[7] Defendants have shown that the inmate grievance procedure at DCJ is outlined in the Inmate Handbook issued to each inmate upon incarceration at DCJ. The section governing this procedure is attached to Defendants' first summary judgment motion. (Montgerard Supp. Aff. Ex. C at 10, ECF No. 62-6.) The procedure is a three-step process beginning with an informal grievance submitted to a specified officer who attempts to resolve the issue. If the inmate is not satisfied he can file an Inmate Grievance Form which is reviewed by the Grievance Officer and a

as of August 27, 2013. (*See* Montegard Supp. Aff. at ¶ 9, Ex. E, ECF No. 62-6.) A review of these grievances shows that none specifically deal with the issues of denial of vision care, medical supplies, or pain medication prior to his filing suit in this case on March 25, 2013. Defendants also state that they are not part of the grievance process, and at no time have they ever instructed a Plaintiff to file a grievance with them directly. (Sproul Aff. at 3, ECF No. 62-5; Lewis Aff. at 3, ECF No. 62-4.) Therefore, any conversations that Plaintiff or his mother may have had with any Defendants are inapplicable to the issue of exhaustion of administrative remedies. Defendants have therefore satisfied their burden to show that Plaintiff did not properly grieve these issues prior to filing suit. It is RECOMMENDED that these claims be DISMISSED.

### 2. Alleged Interference with "Prescribed Treatment"

With regard to the "soft diet" and Ensure, Plaintiff argues that by refusing to provide these items Defendants are "intentionally interfering with" treatment that has been prescribed for him, and are therefore acting with deliberate indifference to his serious medical needs. (Pl.'s Resp. to Second and Third Mots. for Summ. J. 17, ECF No. 77 (quoting *Estelle*, 429 U.S. at 105).) Assuming, *arguendo*, that Plaintiff has shown an objectively serious medical need, Plaintiff has failed to show that these items have ever been prescribed for him, or are even medically necessary to treat his needs.

Plaintiff filed voluminous records from his pre-incarceration medical history. The Court has painstakingly parsed these records and notes and cannot locate any

---

response is made. If the inmate remains unsatisfied with the response, he can appeal by signing the form in the appropriate place and the grievance will be forwarded to the Jail Director for a response. (*Id.*)

prescriptions from any physicians which require Plaintiff to have Ensure or a particular "soft diet." In fact, notes from two visits to Dr. Nwadei's office, upon which Plaintiff bases much of his argument, include no reference to either Ensure or any type of altered diet. (Pl.'s Ex. 1 – Medical Records at 7-13, ECF No. 80-1.) A "Progress Note" from Dr. Grundfast's office regarding a visit on September 28, 2010 stated that Plaintiff tried the recommendations of "eating smaller, more frequent meals, eating slowly, chewing food well, and avoiding raw fruits and vegetables," but that these had not worked. (Pl.'s Ex. 1 – Medical Records at 4-6.) Plaintiff also noted that he had tried Ensure, but that it was too expensive to purchase regularly. (*Id*. at 4.) A note also states that Plaintiff was supposed to see a nutrition consultant for a discussion on Gastroparesis diet, but no further information reflects this consultation occurred. (*Id*.) Nowhere does any physician order that Plaintiff have specific dietary restrictions, and Plaintiff does not specify, other than Ensure, what such a "soft diet" would entail.

Defendants, on the other hand, have put forth evidence in the form of opinions from Drs. Derebail and Grundfast, both Plaintiff's treating physicians, who each state under oath that Plaintiff's requests are not medically necessary and no "soft diet" or Ensure was prescribed. (Derebail Aff. 5-7, ECF No. 65-4; Grundfast Aff. 7, ECF No. 66-4.) Given that no objective evidence supports Plaintiff's allegations, the Court finds that he has failed to show that these items were prescribed to him or that Defendants "intentionally interfered" with his treatment in not providing them. No deliberate indifference has been shown. It is therefore RECOMMENDED that Defendants' motions with regard to the alleged failure to provide Ensure and a "soft diet" be GRANTED.

13

### 3. *Failure to provide colonoscopy*

Plaintiff bases the majority of his claim for the colonoscopy on the opinion of Dr. Nwadei who determined that he was in need of a "thorough evaluation" in order to "rule in/out inflammatory bowel disease as well as colon cancer" in August 2011. (Pl.'s Ex. 1 – Medical Files 12.) This determination, according to the notes was based upon Plaintiff's self-reported family history, "personal history of gastrointestinal bleeding," and other symptoms, (*Id*.) and the fact that the previous colonoscopy was "2 years ago" with notes allegedly indicating "poor bowel prep" for that exam. (*Id*. at 7.) Dr. Nwadei also noted that because Plaintiff was not bleeding at the time he was seen, he was not a candidate for admission to the hospital, but due partly to Plaintiff's distress at the lack of a complete diagnosis, was able to get Plaintiff into an indigent patient program and an appointment with Dr. Grundfast. (*Id*. at 12.)

Drs. Derebail and Grundfast, however, disagree with Dr. Nwadei's notes regarding the urgency of Plaintiff's condition and need for a colonoscopy. Dr. Derebail states that the appointment with Dr. Grundfast scheduled for August 25 with the help of Dr. Nwadei was cancelled on his orders due to security concerns. (Derebail Aff. 3.) Dr. Derebail further states that in each of his encounters with Plaintiff, he complained about abdominal pain, but that physical evaluations were normal. (*Id*. at 3-6.) Furthermore, blood tests showed no abnormalities consistent with internal bleeding or other concern that would suggest the need for a colonoscopy. (*Id*. at 4, 6.) Stool examinations were also performed and resulted in negative findings. (*Id*.) Because Plaintiff continued to complain of blood in his stool, Dr. Derebail scheduled an appointment with Dr. Grundfast

in September 2012. Dr. Grundfast states that he performed a physical examination on Plaintiff and ordered other blood tests, which all resulted in negative findings. (Grundfast Aff. 7.) Dr. Grundfast thereafter determined that "further invasive diagnostic studies" were not required or warranted. (*Id.*)

Based on the affidavits and exhibits filed by the parties, it is clear that Plaintiff's claims can only be based on an argument that the medical treatment which has been provided is not the "right" treatment rather than that the treatment is constitutionally inadequate. Defendants have shown the Court that: Plaintiff has been seen and treated "regularly" by Dr. Derebail for a number of issues (*See generally* Montgerard Supp. Aff. Ex. F); after lab work was ordered and returned negative, Dr. Derebail determined that a colonoscopy was not required, and Dr. Grundfast, a gastroenterologist, later concurred (*Id.* at 3-4, 15-19). These facts are countered only by Plaintiff's own subjective conclusions regarding his need for a colonoscopy and the findings of Dr. Nwadei. This evidence from Plaintiff is insufficient to show that Defendants are in any way indifferent to Plaintiff's medical needs, but instead only show a difference of medical opinion, which does not rise to the level of a constitutional violation. *See Gross v. White,* 340 F. App'x 527, 535 (11th Cir. 2009) ("[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment is not enough to show deliberate indifference to serious medical needs.") It is RECOMMENDED that Defendants' Motions be GRANTED as to the colonoscopy.

    4.    *Failure to provide dental treatment*

Plaintiff also claims that he has uncorrected dental issues, but Defendants show

the Court that Plaintiff has been seen by a dentist on two occasions and had broken teeth extracted. (Montegard Supp. Aff. at ¶ 10, Ex. F at 63-66, 75-76, ECF No. 62-6.) Plaintiff claims other teeth bother him, but shows no evidence beyond his own statements, which are contradicted by the dentist's actions. Because Plaintiff has not put forth any objective evidence to support a serious medical need with regard to his dental issues, and he has been seen on multiple occasions, Plaintiff has not shown the requisite facts to support his claim. Therefore, it is RECOMMENDED that Defendants' motions be GRANTED

## CONCLUSION

For the reasons explained above, it is RECOMMENDED that Defendants motions for summary judgment (ECF Nos. 62, 65, 66) be GRANTED. It is further RECOMMENDED that Plaintiff's motions for injunctive relief (ECF Nos. 45, 51) be DENIED. Pursuant to 28 U.S.C. § 636(b)(1), the parties may file objections to this Recommendation in writing with the United States District Court within fourteen (14) days after being served with a copy hereof.

Furthermore, it is ORDERED that Plaintiff's motion to appoint counsel (ECF No. 34), motion for default judgment (ECF No. 43), and motion to compel discovery (ECF No. 61) are DENIED. Defendant's motion for leave to file a sur-reply (ECF No. 54) and Plaintiff's motion for extension of time to file (ECF No. 74) are GRANTED.

SO ORDERED and RECOMMENDED, this 9th day of July, 2014.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE